UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

George Johnson,

    Plaintiff,

    v.                               Civil Action No. 2:17–cv–41–jmc

Commissioner of Social Security,

    Defendant.

## <u>OPINION AND ORDER</u>
(Docs. 7, 9)

Plaintiff George Johnson has filed a Complaint against the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g), seeking reversal of the Commissioner's December 2016 decision regarding Johnson's application for disability insurance benefits (DIB) and either an award of benefits or remand to the Commissioner for further proceedings. (Doc. 1.) Pending before the Court is the Commissioner's Motion to Dismiss Johnson's Complaint for lack of subject-matter jurisdiction. (Doc. 7.) Therein, the Commissioner argues that the Court has no jurisdiction to review the pending claim—which is essentially a duplicate of Johnson's prior claim that was denied in May 2012—because there is no judicially reviewable "final decision," as required by § 405(g), and Johnson has not alleged a colorable constitutional violation. (*Id.*) Moreover, the Commissioner asserts that Johnson failed to timely appeal the Commissioner's May 2012 decision, thereby failing to exhaust his administrative remedies, and the Commissioner's decision to

deny Johnson's request for additional time to appeal is not subject to judicial review. (*Id.*) Finally, the Commissioner contends that the pending claim was properly precluded from consideration on the grounds of res judicata, and this Court has no jurisdiction to review that determination. (*Id.* (citing Doc. 7-6).)

In response to the Commissioner's Motion, Johnson states that he seeks a "good-cause hearing" to decipher whether Johnson has shown good cause for failing to timely appeal the May 2012 decision, and issuance of a decision that the Court can then review "for substantial evidence." (Doc. 9 at 6.) Johnson argues that the Commissioner's May 2012 decision is reviewable, despite Johnson's failure to timely file an appeal, because: (1) the decision was misleading; and (2) Johnson suffered a mental condition that impaired his ability to understand that decision. (*Id.* at 2–3.) Given those facts, Johnson claims his late request for an appeal of his prior DIB claim is excused.

For the reasons stated below, the Court GRANTS the Commissioner's Motion (Doc. 7), DENIES Johnson's Motion to Remand (Doc. 9), and DISMISSES Johnson's Complaint.

## Factual and Procedural Background

On January 6, 2011, Johnson filed applications for DIB and supplemental security income (SSI), alleging disability beginning on November 1, 1999. (Doc. 7-5 at 4.) The DIB application was denied, and the SSI application was approved. After holding a hearing on Johnson's DIB claim, Administrative Law Judge (ALJ) Paul Martin issued a decision on May 25, 2012, finding that Johnson "was not

disabled prior to December 1, 2010, but became disabled on that date and has continued to be disabled through the date of this decision." (*Id.* at 14 (citations omitted).) The decision clarifies that, although Johnson became disabled on December 1, 2010, he "was not disabled . . . through . . . the last date insured." (*Id.*) Attached to the ALJ's decision is a document prepared by the Social Security Administration titled "Notice of Decision – Partially Favorable." (*Id.* at 1.) That Notice was apparently mailed to Johnson on or around May 25, 2012. (*Id.*) Despite the Notice's instruction that Johnson "must file [his] written appeal [of the ALJ's May 2012 decision, if any,] **within 60 days** of the date [he received] th[e] notice" (*id.* (emphasis in original)), Johnson did not file an appeal until almost two years later, on March 20, 2014 (*see* Doc. 7-6 at 3). On June 19, 2015, the Appeals Council denied Johnson's appeal on the ground that it was not timely filed, and found that "there is no good cause to extend the time for filing." (*Id.* at 4.)

Approximately five months later, in November 2015, Johnson filed a new DIB claim,[1] this time alleging disability beginning on December 31, 2008. (Doc. 7-8 at 4.) On December 20, 2016, ALJ Thomas Merrill denied the claim, finding that it was barred by the doctrine of res judicata and stating: "[Johnson's] rights on the same facts and on the same issues are involved [here as were involved in his prior claim that was denied on May 25, 2012,] and [thus] the doctrine of res judicata applies." (*Id.* at 7; *see also id.* at 4, 6 (finding that no new and material evidence

---

[1] In the Complaint, Johnson states that he did not intend for the November 2015 filing to be considered a new claim, explaining: "[O]n November 9, 2015[,] Plaintiff asked leave to appeal the decision dated May 25, 2012 under the good-cause exceptions in Social Security Rule 91-5p[,] . . . [but] Social Security processed the request to appeal . . . as a new application." (Doc. 1 at 2–3.)

3

had been submitted in conjunction with the November 2015 claim and that there had been no change in statute, regulation, or ruling concerning the facts and issues ruled on in connection with the previously adjudicated period). Moreover, the ALJ found that the earlier May 2012 decision "remains final and binding." (*Id.* at 6; *see also id.* at 5 ("the prior ALJ decision remains the final decision").) The ALJ explained that Johnson had not requested review of the May 2012 decision within the required period and had not established "good cause" to extend that period, as he had not "establish[ed] that he lacked the mental capacity to understand the procedures for requesting review" (*id.* at 5) or that the decision was "so confusing as to mislead" Johnson (*id.* at 6). Johnson appealed the ALJ's decision, and the Appeals Council denied the appeal. (Doc. 7-9.) Finally, on March 16, 2017, Johnson filed the Complaint, initiating this action. (Doc. 1.)

## Standard of Review

Federal courts are courts of limited jurisdiction and may not decide cases over which they do not have subject-matter jurisdiction. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed."). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); *see Louis v. Comm'r of Soc. Sec.*, No. 09 Civ. 4725(JGK), 2010 WL 743939, at *1 (S.D.N.Y. Mar. 2, 2010). However, the burden is on the plaintiff to prove by a

preponderance of the evidence that jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Unlike on a Rule 12(b)(6) motion, on a motion to dismiss for lack of subject-matter jurisdiction, the court is authorized to consider matters outside of the pleadings, including affidavits, documents, and testimony. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). Therefore, in considering the Commissioner's Motion to Dismiss, the Court may consider the documents attached to it, including the May 2012 and December 2016 ALJ decisions, their corresponding notices, and the June 2015 Appeals Council order. (*See* Docs. 7-5, 7-6, 7-8.)

## Analysis

### I. Subject-Matter Jurisdiction

In social security cases, 42 U.S.C. § 405(g) "provides the exclusive means by which the federal courts may review a decision of the Commissioner." *Feine v. Astrue*, No. 2:08-CV-163, 2009 WL 688990, at *2 (D. Vt. Mar. 9, 2009); *see Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007); 42 U.S.C. § 405(h) ("No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."). Section 405(g) states, in pertinent part: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action." 42 U.S.C. § 405(g). The Supreme Court has instructed that § 405(g) "clearly limits judicial review to a particular type of agency action[:] a *final decision* of the [Commissioner] made after

a hearing." *Califano v. Sanders*, 430 U.S. 99, 108 (1977) (emphasis added) (internal quotation marks omitted). Therefore, "[a] final decision is 'central to the requisite grant of subject matter jurisdiction.'" *Fitzgerald v. Apfel*, 148 F.3d 232, 234 (3d Cir. 1998) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)); *see Iwachiw v. Massanari*, 125 F. App'x 330, 331 (2d Cir. 2005) ("Pursuant to 42 U.S.C. § 405(g), an individual must obtain a final decision of the Commissioner before a federal court can review Social Security benefit determinations.") (internal quotation marks omitted).

"The requirement of a 'final decision' has two components: (1) a non-waivable requirement that a claim for benefits has been presented to the [Commissioner], and (2) a waivable requirement that the administrative remedies prescribed by the [Commissioner] have been exhausted." *Iwachiw*, 125 F. App'x at 331. The term "final decision" is undefined in the Social Security Act; "its meaning is left to the [Commissioner] to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). The Commissioner has construed the term "through a series of regulations setting forth a detailed administrative process." *Iwachiw*, 125 F. App'x at 331 (citing *Weinberger*, 422 U.S. at 766). Under those regulations, an individual claiming entitlement to Social Security benefits first receives an initial determination. 20 C.F.R. § 404.902. If dissatisfied with that determination, the claimant may request reconsideration and then a hearing before an ALJ. 20 C.F.R. §§ 404.907, 404.929. If the ALJ renders an unfavorable decision, the claimant may request review from the Appeals Council. 20 C.F.R. § 404.967. The ALJ's decision

does not become "final" until "after the Appeals Council has denied review or decided the case after review." *Iwachiw*, 125 F. App'x at 331 (quoting *Matthews v. Chater*, 891 F. Supp. 186, 188 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 681 (2d Cir. 1996) (table)); *see* 20 C.F.R. § 404.981. If the claimant does not pursue administrative appeal rights, the ALJ's decision becomes binding. 20 C.F.R. §§ 404.905, 404.955.

Here, neither the May 2012 decision nor the December 2016 decision ever became "final." The May 2012 decision did not become final because Johnson failed to request Appeals Council review within the 60-day period required under the regulations. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Johnson himself concedes this fact, stating in the Complaint that he "did not appeal the [May 2012] decision." (Doc. 1 at 2.) And the December 2016 decision did not become final because there was no administrative hearing, as again conceded by Johnson in the Complaint (*see id.* at 3). *See* 20 C.F.R. § 404.929; *Matthews v. Chater*, 101 F.3d 681, 1996 WL 146534, at *1 (2d Cir. 1996) (table); *Faucette v. Colvin*, No. 15 Civ. 8495 (AJP), 2016 WL 866350, at *3 (S.D.N.Y. Mar. 3, 2016) ("The Second Circuit interprets Section 405(g) to grant jurisdiction to review a[] [Social Security Administration] decision only if that decision follows an actual hearing on the merits." (citing *Dietsch v. Schweiker*, 700 F.2d 865, 867 (2d Cir. 1983))). There was no administrative hearing because, as stated in the December 2016 decision, the ALJ declined to review the November 2015 claim on the grounds of res judicata, accurately finding that it involved "the same facts" and "the same issues" as the original January 2011 claim. (Doc. 7-8 at 7.) As discussed in more detail below, courts generally lack jurisdiction

to review denials of benefits based on res judicata, because such denials are entered without a hearing. *Yeazel v. Apfel*, 148 F.3d 910, 911 (8th Cir. 1998). Moreover, when, as here, an untimely administrative appeal is dismissed on procedural grounds, there is no final decision on the merits of a claim by the Commissioner and therefore the claim is not reviewable. *Hilmes v. Sec'y of Health & Human Servs.*, 983 F.2d 67, 70 (6th Cir. 1993); *see Dryden v. Comm'r of Soc. Sec.*, Case No. 1:14-CV-496, 2015 WL 12698064, at *3 (S.D. Ohio Jan. 26, 2015) ("dismissal of an untimely appeal is not a 'final decision' subject to review under § 405(g)"), *Report and Recommendation adopted*, Case No. 1:14CV496, 2015 WL 12698065 (S.D. Ohio Feb. 18, 2015)

For these reasons, the Commissioner's argument that the Court is without jurisdiction to review Johnson's claim has significant merit.

## II.     "Colorable Constitutional Claim" Exception to Jurisdictional Bar

The inquiry does not end there, however, because there are certain circumstances in which a federal court may review a social security disability claim even though it has not been adjudicated on the merits in a hearing that has produced a "final decision." Specifically, an exception to the "no jurisdiction" rule exists where there is a "colorable constitutional claim." *Califano*, 430 U.S. 99, 109 ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions."). Johnson argues that this action involves a colorable constitutional claim because the Complaint alleges a due process violation based on

misleading statements contained in the Commissioner's May 2012 Notice of Decision. (Doc. 9 at 1–2 (citing *Stieberger v. Apfel*, 134 F.3d 37 (2d Cir. 1997); *Byam v. Barnhart*, 336 F.3d 172 (2d Cir. 2003)).) A colorable constitutional claim may in fact include allegations like these.

The United States District Court for the Northern District of New York explained: "[T]he [Commissioner] has an affirmative duty to avoid providing [social security] applicants with misleading information, especially when the applicant was without counsel . . . and relied on the plain language of . . . [the] notice [denying her disability claim]." *Christopher v. Sec'y of Health & Human Servs.*, 702 F. Supp. 41, 43 (N.D.N.Y. 1989) (internal quotation marks omitted) (due process claim presented, where reconsideration notice informed claimant she had 60 days to request hearing and if she did not, she still had right to file another application at any time); *see also Butland v. Bowen*, 673 F. Supp. 638, 641 (D. Mass. 1987) (due process claim presented, where denial notice sent to plaintiff was "misleading enough to introduce a high risk of error into the claims adjudication process" because it "falsely assured plaintiff that she could file another claim 'at any time,' when in fact she faced a four-year deadline"). Likewise, the Eastern District of Pennsylvania stated: "Where a claimant can show an insufficiency of notice such that 'the notice cannot reasonably convey the required information[,]' judicial review of an ALJ's decision may be sought." *Melloy v. Shalala*, Civ. A. No. 94–1375, 1994 WL 689963, at *5 (E.D. Pa. Dec. 7, 1994) (quoting *Christopher*, 702 F. Supp. at 43).

Applying this law, in *Penner v. Schweiker*, 701 F.2d 256 (3d Cir. 1983), the Third Circuit found that the plaintiff raised a colorable constitutional claim based on the Commissioner's failure to send a notice denying the plaintiff's request for reconsideration to the plaintiff's attorney who represented the plaintiff because of his mental disability. And in *Aponte v. Sullivan*, 823 F. Supp. 277, 282 (E.D. Pa. Mar. 4, 1993), the United States District Court for the Eastern District of Pennsylvania held that the plaintiff presented a colorable constitutional claim where the notice given to him failed to inform him of the adverse consequences of not filing a request for a hearing. *See also Melloy*, 1994 WL 689963, at *6 (constitutional claim presented, where plaintiff received "two notices—from the same agency, on the same date, denying disability benefits—that contain[ed] different information regarding the effect of certain administrative remedies"). In *Escalera v. Commissioner*, on the other hand, the Second Circuit held that the plaintiff's failure to exhaust administrative remedies was not excused because the relevant notices from the Social Security Administration "plainly stated that [the plaintiff] had to make his request [to appeal] in writing, within 60 days," and thus the Commissioner had not misled the plaintiff to believe that his in-person objections at an office of the Social Security Administration would satisfy the social security appeals process. 457 F. App'x 4, 7 (2d Cir. 2011). Likewise, in *Yeazel v. Apfel*, 148 F.3d 910, 912 (8th Cir. 1998), the Eighth Circuit found that a notice denying the plaintiff's disability application—which "informed [the plaintiff] that he

risked losing benefits should he fail to appeal and that he ought to appeal if he thought the denial was wrong"—was "not misleading or likely to induce an applicant to forego an appeal" and thus "satisfied due process."

Johnson's due process claim stems from the Commissioner's alleged act of misleading Johnson by labeling the May 2012 Notice of Decision "Partially Favorable," when in fact the decision is "unfavorable" according to Johnson, as it "does not find [Johnson] disabled at a time that he had insured status and does not award him any benefits." (Doc. 9 at 3.) Johnson explains that he did not appeal the May 2012 decision based on the inaccurate "Partially Favorable" label, which he believed meant he was being awarded benefits and thus should not "jeopardize [those] benefits" by appealing. (*Id.*) The Court finds Johnson's argument without merit, as the May 2012 Notice of Decision is accurate and sufficiently apprised Johnson of his administrative remedies. Moreover, the Court rejects Johnson's argument that he had a mental impairment that contributed to his being misled by the Notice of Decision.

A. **The Notice of Decision Accurately States that the ALJ's Decision Is "Partially Favorable."**

First, the Notice of Decision accurately states that the ALJ's decision is "partially favorable." (Doc. 7-5 at 1.) Under the Social Security Administration's Program Operations Manual System (POMS), a "partially favorable" decision on a Title II claim means the Commissioner "found the claimant disabled or blind, but *the established onset date . . . is unfavorable because it is after the alleged onset date . . . .*" POMS DI 25501.280(A)(1), available at https://secure.ssa.gov/apps10/

poms.nsf/lnx/0425501280 (last visited Oct. 13, 2017) (emphasis added).[2]  The May

2012 decision states that Johnson "must establish disability on or before [the date

last insured of June 30, 2009]" (Doc. 7-5 at 4), and concludes that Johnson "was not

disabled . . . through June 30, 2009,[3] the last date insured," but "became

disabled . . . beginning on December 1, 2010," i.e., *after the date last insured* (*id.* at

14).  The decision therefore clearly and correctly explains the meaning of "partially

favorable," as used in the Notice of Decision, and finds that Johnson "was not

disabled" during the relevant period.  (*Id.*)  Had Johnson read the decision, he

would have understood its meaning, particularly given that he did not allege in his

original 2011 disability application any significant mental health condition,

inability to read or write, limited education, or other condition that would limit his

ability to understand such a decision.  It is not too much for the Commissioner to

require claimants, whether represented by counsel or not, to at least read the ALJ

decision mailed to them with the Notice of Decision.  Here, after referencing "the

---

[2] Although the POMS does not have the force and effect of law, it is nevertheless persuasive authority and thus is entitled to be given weight.  *See St. Mary's Hosp. of Troy v. Blue Cross & Blue Shield*, 788 F.2d 888, 890 (2d Cir. 1986); *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989); *Frerks v. Shalala*, 848 F. Supp. 340, 350 (E.D.N.Y 1994).

[3] The ALJ's December 2016 Order of Dismissal advises that the May 2012 decision incorrectly references June 30, 2009 as the date last insured, when in fact, "[u]pdated records . . . show that continued work activity resulted in a date last insured of June 30, *2010*."  (Doc. 7-8 at 6 (emphasis added).)  On the other hand, the Commissioner states in her Reply to Johnson's Opposition that the date last insured is June 30, *2009*, as stated in the May 2012 decision.  (Doc. 12 at 2 n.2.)  The Court need not resolve this issue because, as noted in the December 2016 Order, any error would be harmless, given that the established disability onset date—December 1, 2010—is after both June 30, 2009 and June 30, 2010.  (Doc. 7-8 at 6.)

enclosed partially favorable decision," ALJ Martin urges in the Notice of Decision:

"Please read this notice and my decision." (Doc. 7-5 at 1.)

### B. The Notice of Decision Sufficiently Apprises Johnson of His Administrative Remedies.

Second, the Notice of Decision sufficiently apprises Johnson of his

administrative remedies. Specifically, the Notice correctly states:

> If you disagree with my decision, you may file an appeal with the Appeals Council. . . . To file an appeal you must ask in writing that the Appeals Council review my decision. . . . You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

(*Id.* at 1 (emphasis in original).) The Notice also properly warns of the

consequences should Johnson not file a written appeal on time:

> If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

(*Id.* at 2.) Finally, the Notice accurately advises Johnson of his rights and

limitations if he opts not to file an appeal:

> If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

(*Id.* at 3.) Despite this clear and accurate language, Johnson admits that he did not

seek to appeal the May 2012 decision until November 2015, long past the 60-day

period. (*See* Doc. 1 at 2.)

**C.** **Johnson Has Not Asserted a Sufficiently Particularized Statement of Mental Impairment to Constitute Good Cause for Equitable Tolling of the Appeals Deadline.**

Johnson contends that his "late request for an appeal is . . . excused under Social Security Ruling 95-1p" (Doc. 1 at 3), which sets forth the criteria to determine whether good cause exists for missing the deadline to request appellate review of the denial of benefits. One of those criteria is "[w]hether [the claimant] had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented [him] from filing a timely request or from understanding or knowing about the need to file a timely request for review." SSR 95-1p, 1995 WL 259487, at *1 (April 26, 1995) (quoting 20 C.F.R. § 404.911(a)). Johnson states in his Opposition that, although he "is not alleging that [the May 2012 Notice] was ineffective *solely* because of his mental capacity" (Doc. 9 at 2), "[h]is mental capacity *may have* played a role in his not realizing he was being misled" and thus failing to appeal[4] (*id.* at 2–3 (emphases added)).

A social security claimant suffering from mental illness may in fact raise a colorable due process claim when he asserts that his mental illness prevented him from proceeding from one administrative level to another in a timely fashion. *Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir. 1991) (citing *Elchediak v. Heckler*, 750 F.2d 892, 894 (11th Cir. 1985)). However, "a claimant's argument that []he was

---

[4] The language used in the Complaint is less ambiguous on the issue of whether Johnson had a mental condition that contributed to his inability to understand the ALJ's May 2012 decision: "[Johnson] did not appeal the 2012 ALJ decision within the time allowed because the ALJ's decision misle[]d him and *because he suffered a mental condition that impaired his ability to understand it*." (Doc. 1 at 3 (emphasis added).)

so impaired as to be unable to pursue administrative remedies requires more than a 'generalized allegation' of confusion; it requires a 'particularized allegation of mental impairment plausibly of sufficient severity to impair comprehension.'" *Byam*, 336 F.3d at 182 (quoting *Stieberger*, 134 F.3d at 40–41). The Second Circuit explained: "A claim of constitutionally defective notice, even in the context of a claim for disability benefits based on mental illness, cannot invoke federal court jurisdiction merely upon a generalized allegation, long after the fact, that the claimant was too confused to understand available administrative remedies." *Stieberger*, 134 F.3d at 41. In *Stieberger*, the Second Circuit found that the heightened standard was met, where the plaintiff alleged that she had a mental illness for decades, requiring hospitalization for 11 days for depression with suicidal ideation; that she had "continuous treatment [since 1967] for depression, neurosis, schizophrenia, and anxiety"; and that she had a 1974 diagnosis of "Schizophrenia schizo-affective, depressed type." *Id.* (internal quotation marks omitted). And in *Byam*, the Second Circuit found that evidence of the claimant's "long history of depression, suicidal ideation with specific suicide attempts, and numerous evaluations around the dates of her SSI applications documenting specific mental disorders and cognitive, social, and emotional impairments" was "sufficiently particularized" to meet *Stieberger's* threshold allegation requirement. *Byam*, 336 F.3d at 183.

Here, in contrast, Johnson alleges merely that he "suffered a *medical condition* that impaired his ability to full[y] understand ALJ Martin's decision"

(Doc. 1 at 2), and that he "suffered a *mental condition* that impaired his ability to understand [the ALJ's decision]" (*id.* at 3) (emphases added). No specificity is provided regarding the "medical/mental condition" that affected Johnson's ability to understand the ALJ's decision. Cases where the heightened pleading standard is met involve allegations of significantly greater mental impairments than alleged here. *See, e.g., Byam*, 336 F.3d at 183; *Stieberger*, 134 F.3d at 41; *Manney v. Astrue*, Civil Action No. 5:09–CV–255, 2010 WL 3766993, at *11 (July 23, 2010) (diagnoses of agoraphobia, panic attacks, and depressive disorder by multiple treating and consulting medical professionals during the relevant period), *Report and Recommendation adopted*, 2010 WL 3766966 (D. Vt. Sept. 27, 2010). Moreover, as noted, Johnson's original 2011 claim did not involve allegations of a disabling mental impairment, and ALJ Martin found that Johnson had at least a high school education and was able to communicate in English. (*See* Doc. 7-5 at 7–8, 13.) The June 2015 Appeals Council order states:

> There are no treatment records relevant to the appeal filing period . . . establishing that [Johnson] had severe mental deficits that would have precluded him from timely filing his appeal. No treatment records relevant to the appeal filing period were submitted with the request for review, and there are few objective findings in the evidence of record regarding [Johnson's] mental functioning. However, there is a mental health treatment record dated March 23, 2012, shortly before the appeal filing period, indicating that [Johnson's] mental status exam was normal with the exception of a slightly depressed mood.

(Doc. 7-6 at 4.)

Johnson has failed to sufficiently allege that his medical/mental impairments prevented him from pursuing an appeal of the ALJ's May 2012 decision.

### III. The Court Lacks Jurisdiction to Review the Commissioner's Decision Not to Reopen Johnson's Claim.

Johnson initially advises in his Opposition that he "is not alleging constructive reopening." (Doc. 9 at 2.) Later in the same document, however, he instructs that the Court may review "decisions that the Commissioner constructively reopens so long as it otherwise has jurisdiction," and states (referring to the December 2016 ALJ decision): "the ALJ clearly reopened the [Appeals Council's June 2015] good-cause determination and significantly altered the [Appeals Council's] previous findings by extending them to the allegation of a misleading notice." (*Id.* at 5.) To the extent that Johnson seeks remand based on a constructive reopening of the initial claim in either the June 2015 Appeals Council order or the December 2016 ALJ decision, the claim fails.

The Appeals Council plainly declined to reopen the January 2011 claim in its June 2015 Order, finding that "there is no good cause to extend the time for filing," and thus "dismiss[ing] [Johnson's] request for review." (Doc. 7-6 at 4.) That Order does not constitute an "initial determination," and thus is not subject to judicial review. The regulations specifically provide that "[t]he dismissal of a request for Appeals Council review is binding and not subject to further review." 20 C.F.R. § 404.972; *see Dietsch*, 700 F.2d at 867 ("The Appeals Council may . . . extend the filing time on a showing of good cause, 20 C.F.R. § 404.968(b), but a refusal to do so, like a dismissal of an untimely request, is not subject to judicial review.") (citing *Watters v. Harris*, 656 F.2d 234, 239–40 (7th Cir. 1980); *Sheehan v. Secretary,*

*Health, Educ. and Welfare*, 593 F.2d 323, 325 (8th Cir. 1979); *Maloney v. Harris*, 526 F. Supp. 621, 622 (E.D.N.Y. 1980)).

In his December 2016 decision, the ALJ also declined to reopen the claim, stating: "none of the conditions for reopening . . . is present in this case," and "the previous decision remains final and binding." (Doc. 7-8 at 6.) Both the ALJ decision and the Appeals Council order considered whether good cause existed to extend Johnson's time to appeal the May 2012 ALJ decision; and neither reconsidered the merits of that decision, i.e., whether it was supported by substantial evidence and applied the correct legal standard. (*See* Docs. 7-6 and 7-8.) Thus, neither decision constitutes a constructive reopening of Johnson's original claim. Moreover, the Commissioner's discretionary denial of Johnson's request to reopen that claim is not subject to judicial review absent a colorable constitutional claim, which does not exist here as discussed above. *See Califano*, 430 U.S. 99 at 108 ("allow[ing] a claimant judicial review simply by filing and being denied a petition to reopen his claim would frustrate the congressional purpose . . . to impose a 60-day limitation upon judicial review of the [Commissioner's] final decision on the initial claim for benefits. Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims") (citation omitted). In the absence of either constructive reopening or a constitutional claim, the Court lacks jurisdiction to review the Commissioner's decision not to reopen Johnson's claim. *Byam*, 336 F.3d at 180.

**IV.    The Court Lacks Jurisdiction to Review the Commissioner's Decision to Preclude Johnson's Claim Based on the Doctrine of Res Judicata.**

Finally, the Commissioner argues that Johnson's pending claim was properly precluded from consideration by the Appeals Council in June 2015 on the grounds of res judicata.  (Doc. 7 at 8–9 (citing Doc. 7-6).)  The Commissioner correctly points out that this claim is a duplicate of Johnson's original claim which resulted in the May 2012 ALJ decision, as the claims involve essentially the same impairments, alleged disability period, and evidence.  (*Id.*; *see also* Doc. 12 at 5–6.)  In response, Johnson claims that, because the Appeals Council's 2015 order does not consider the "misleading nature" of the May 2012 decision, this case and the Appeals Council order do not address the same facts or issues, and thus res judicata does not apply to Johnson's current allegations.  (Doc. 9 at 5.)

The Commissioner's decision to preclude consideration of Johnson's pending claim on the basis of res judicata is not judicially reviewable.  When a social security claimant has received a previous determination or decision under the Social Security Act and that determination or decision has become final by either administrative or judicial action, the ALJ may "dismiss a hearing request entirely or . . . refuse to consider any one or more of the issues because [the doctrine of res judicata applies]."  20 C.F.R. § 404.957(c)(1).  Such a denial "does not represent a final decision upon which administrative or judicial review may be requested." *Bessette v. Comm'r of Soc. Sec.*, No. 09-CV-735 TJM/DRH, 2010 WL 5677184, at *4 (N.D.N.Y. Dec. 14, 2010) (citing *Hensley v. Califano*, 601 F.2d 216 (5th Cir. 1979) (holding that attempted appeals regarding denials to reopen and decisions based on

res judicata are "not reviewable")); *see also Byam*, 336 F.3d at 180–82; *Yeazel*, 148 F.3d at 911 ("courts generally lack jurisdiction to review denials of benefits based on res judicata, because such denials are entered without a hearing"); *Stauffer v. Califano*, 693 F.2d 306, 307 (3d Cir. 1982) ("the courts of appeals of several circuits have held that dismissals of 'new' claims that effectively repeat previously denied claims and which are therefore held by the [Commissioner] to be res judicata are not reviewable"); *Ellis v. Schweiker*, 662 F.2d 419, 419 (5th Cir. 1981) (court lacked jurisdiction where the "[Commissioner] denied benefits on grounds of res judicata and simultaneously refused to reopen an earlier claim"); *Shrader v. Harris*, 631 F.2d 297, 300 (4th Cir. 1980) (underlying rationale preventing court review of Commissioner's decision not to reopen applies equally to Commissioner's dismissal of claim based on res judicata).

## <u>Conclusion</u>

For these reasons, the Court holds that there is no "final decision" of the Commissioner and thus the Court is without jurisdiction over Johnson's claim. Although it is possible for a defective or misleading notice of disability decision to give rise to a colorable constitutional due process claim, the Commissioner's May 2012 Notice of Decision was not defective or misleading: it properly advised Johnson of both the ALJ's decision and Johnson's appeal rights. Moreover, Johnson has not pled a mental impairment sufficient to constitute good cause for his failure to timely appeal the ALJ's May 2012 decision.

Therefore, the Court GRANTS the Commissioner's Motion to Dismiss (Doc. 7), DENIES Johnson's Motion to Remand (Doc. 9), and DISMISSES Johnson's Complaint (Doc. 1) for lack of subject-matter jurisdiction. The Clerk shall enter judgment on behalf of the Commissioner.

Dated at Burlington, in the District of Vermont, this 25th day of October 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge